MANUEL PALMES, AS COLLECTOR OF REVENUE FOR ESCAMBIA COUNTY, APPELLANT, vs. THE LOUISVILLE AND NASHVILLE RAILROAD COMPANY, APPELLEE.

1. This court in the case of Gonzalez vs. Sullivan held that the exemption of the railroad and its appurtenances extending from Pensacola to the northern boundary line of Florida, in the direction of Montgomery, Alabama, was exempt from taxation in the hands of parties who derived it by a succession of transfers from the corportion originally owning the road. This upon the ground that the exemption attached to the *rem*, and was not a personal privilege or immunity restricted in its operation to the corporation owning the road at the time the exemption attached. Since that decision the Supreme Court of the United States in deciding the case of Wilson vs. Gaines, 103 U. S., 417, has expressed views which we cannot say with absolute certainty will not, when applied to the facts existing here, result in restricting the operation of the immunity to the corporation owning the road when it was granted. As under the Constitution of the United States matters concerning the obligation of contracts are appropriately the subject of final determination by the Federal courts, and to the rules announced by it upon this subject the State courts should render a cheerful obedience, and as under the pecular legislation of Congress the decision of this court must be in favor of the

validity of the statute of the State in order to give jurisdiction to the Supreme Court of the United States, it is the duty of the State court in cases of doubt resulting from antecedent decisions of the Supreme Court of the United States in reference to like subjects matter to act in such manner as to give the Supreme Court of the United States jurisdiction. This in a matter of important public concern in which the other departments of the government have differed with this court in its conclusions.

2. The 18th section of the Internal Improvement Law granting immunity from taxation to the roads embraced in the internal improvement system of this State was not in conflict with the Constitution in force at the time of the passage of the Internal Improvement Law.

3. The limitation upon the power of the Legislature embraced in Section 2, Article 13, of the Constitution of 1839 prohibiting the amendment of any act of incorporation, unless after three months public notice given of intended application therefor, did not control the Legislature in discharging its duty in the matter of legislation concerning roads belonging to the constitutional system of internal improvements, which it was the duty of the Legislature to create and encourage under Section 2, Article XI., of the Constitution.

Appeal from the Circuit Court for Escambia county.

The bill of complaint was filed March 25th, 1882, and is in substance as follows:

1st. The Louisville and Nashville Railroad Company, a corporation created and existing under the laws of the State of Kentucky and doing business in the State of Florida, brings this, its bill, against Manuel Palmes, Collector of Revenue in and for said county, and says that the respondent has levied upon and offered for sale on the 3d day of April, 1882, the following property, to-wit: 2 locomotives and (10) box cars Nos. 4279, 1924, 1364, 1368, 2046, 19229, 3683, 4219, 4391 and 7293, for State and county taxes alleged to be due for the years 1879, 1880 and 1881 upon the railroad track situated in said county and extending from the City of Pensacola to the Alabama line, together with

locomotives, passenger, freight and other cars and machine shops belonging thereto, said railroad being owned and controlled and operated by your orator.

2d. The said railroad above mentioned was the property of your orator, is the same railroad that was built and for a time operated by the Alabama and Florida Railroad Company, a corporation chartered by an act of the General Assembly of the State of Florida, approved January 8, 1853; and that the said Alabama and Florida Railroad, with all and singular the stations, depot buildings, engine houses, road-bed, superstructure, tracks and other improvements and constructions thereon made, and all the rights, privileges and franchises of the Alabama and Florida Railroad Company were sold under a decree of foreclosure rendered by this court on the 31st day of May, 1872, and purchased by the Pensacola and Louisville Railroad Company, a corporation chartered by an act of the General Assembly of this State, approved 4th of February, 1872.

3d. The said railroad, with all the property connected therewith, its privileges, franchises, immunities, was afterwards sold under a decree of foreclosure rendered by the Circuit Court of Leon county against the said Pensacola and Louisville Railroad Company, and was purchased by the Pensacola Railroad Company, a corporation chartered by an act of the General Assembly of the State of Florida, approved February 27th, 1877. Copies of the deeds of conveyance mentioned in this and the 2d and 3d paragraphs are annexed as exhibits to the bill.

4th. The aforementioned railroad, with all its property connected therewith, and all its franchise, privilege, easement and immunities, were afterwards sold by the Pensacola Railroad Company to your orator, and is now owned, controlled and operated by your orator.

5th. By the 18th section of an act of the General As-

sembly of this State entitled an act to provide for and encourage a liberal system of internal improvements in this State, approved 6th January, 1855, it was provided that the capital stock of any railroad company accepting the provisions of this act shall be forever exempt from taxation, and the roads, their fixtures and appurtenances, including work-shops, ware-houses, vehicles and property of every description needed for the purpose of freight and passengers or for the repair and maintenance of the road, shall be exempt from taxation while the roads are under construction and for the period of thirty-five years from their completion.

6th. By an act of the General Assembly of this State entitled an act to facilitate the construction of the various lines of railroad provided for by the act entitled an act to provide for and encourage a liberal system of internal improvements in this State, approved January 6th, 1855, approved 14th of December, 1855, it was provided by the 4th section thereof that a line of railroad to be constructed from the City of Pensacola, or any other point or points on the waters of the Pensacola bay, or the waters of St. Andrews bay, to the north line of the State leading in the direction of Montgomery, Alabama, shall be considered as proper improvements to be aided from the Internal Improvement Fund in the manner provided for, or may be hereafter provided for, in an act to provide for and encourage a liberal system of internal improvements in this State, approved January 6th, 1855.

7th. The Alabama and Florida Railroad Company, on the 12th of March, 1856, notified the Board of Internal Improvement of its acceptance of the terms of the act in relation to internal improvements, approved January 6th, 1855, and also of the act approved December 14, 1855.

8th. The said Alabama and Florida Railroad Company

availed itself of the benefit granted by the said acts of January 6 and December 14, 1855, by constructing and completing on or about the first day of July, 1860, the line of railway therein provided for, to-wit: from the City of Pensacola to the north line of the State in the direction of Montgomery, Alabama, and, as your orator is informed and believes, by doing all other things necessary to entitle it to all the benefit of the 18th section of said act of January 6th, 1855, and by another act of the said General Assembly entitled an act granting to the Alabama and Florida Railroad Company alternate sections of the swamp and overflowed lands, approved January 15th, 1859, as well as by the action of the Board of Internal Improvements, as your orator is informed and believes, in setting apart to said railroad company, in pursuance of said act, its quota of lands ; the said Alabama and Florida Railroad was recognized and adopted as one of the roads entitled to all the benefits of the act to provide for and encourage a liberal system of internal improvements in this State, approved January 6th, 1855.

9th. By the purchase aforesaid from the Pensacola Railroad Company by your orator your orator became entitled to all the rights, property, privileges, franchises and immunities of the said Alabama & Florida Railroad Company, the Pensacola & Louisville Railroad Company and the Pensacola Railroad Company under the various acts incorporating these companies and acts amendatory of the same.

10th. The said railroad, together with its locomotives, passenger, freight and other cars, machine shops belonging thereto, including the property levied on by respondent, are exempt from taxation until the year 1895.

11th. No assessment of the said railroad and property was made for the years 1879 and 1880, that the defendant is not authorized in demanding any taxes for either of said years.

12th. The said proposed sale of the property so levied on by respondent will greatly impede and embarrass the business of your orator and cause it irreparable injury, and your orator further shows unto your Honor that the respondent is without property and unable to respond to your orator in a suit at law for damages, and that such proceedings tend to cloud the title of your orator, and that your orator is without redress save in the interposition of this court.

13th. The bill prays the court to restrain and enjoin the respondent from proceeding to sell as aforesaid the said property so levied on, or anything else connected with the said railroad and required for the use and maintenance thereof for the alleged taxes, and other and further relief in the premises as may seem meet and agreeable to equity and for process.

The answer of the Collector of Revenue is sworn to, and was filed on the same day as the bill. After making exception as to equitable jurisdiction, it is substantially as follows:

Defendant admits that he has levied upon and offered for sale on the 3d day of April, 1882, the engines and cars numbered in the said bill for taxes claimed by the State of Florida and Escambia county to be due from the complainant upon its said property in Escambia county, which he avers he has done by the express orders of the Governor and Comptroller of the State of Florida, who as he is advised and alleges have given such directions in pursuance of the Constitution and laws of Florida and of a joint resolution of the General Assembly of Florida, approved March 4th, 1881.

As to so much of complainant's bill as claims that by acts of the Legislature the property of the Alabama and Florida Railroad Company was exempted from taxation for thirty-five years, and that by reason of the Louisville and Nash-

ville Railroad Company purchasing the same at a foreclosure sale, and the Pensacola Railroad Company subsequently purchasing the same at subsequent foreclosure sale, and the complainant claiming to have purchased the same with the franchises, privileges, easements and immunities which were held by the Pensacola Railroad Company from the said Pensacola Railroad Company in manner and form as by said bill stated in the 2d, 3d, 4th, 5th, 6th, 7th and 8th paragraphs of said bill, the complainant is exempted from the payment of the taxes demanded by the State of Florida and county of Escambia, and by this defendant sought to be collected by the levy and proposed sale complained of, defendant claims all the benefit he could have from a demurrer interposed thereto.

Defendant says that he is advised that if, as claimed by complainant, the Legislature of Florida by the several acts cited by complainant did intend to exempt the property of the Alabama and Florida Railroad Company from taxation for the term of thirty-five years, the said Legislature transcended its constitutional powers, and the said acts cannot be construed or held as exempting the property of the Alabama and Florida Railroad Company from taxation, as claimed by complainant's bill, for defendant alleges that said exemption was not extended to all railroad companies and their property in the State of Florida. That as to the allegations contained in paragraph 7 of complainant's bill defendant has not sufficient information to either admit or deny the same, and demands strict proof thereof; and also of the allegations of fact contained in paragraph 8 thereof, especially that said railroad was or is constructed as required by said acts and amendments thereto.

Defendant is advised and charges that the alleged grant of exemption, if made, was made gratuitously and without consideration, and if there was any consideration it was not

such consideration as to preclude the people of Florida, and their Legislature by their subsequent organic law and legislation from subjecting even the said Alabama and Florida Railroad Company to the same burdens as are imposed upon other corporations or natural persons who enjoy the benefits of State and county governments, that even if the said acts cited by complainant's bill did intend, and did constitutionally exempt the property of the Alabama and Florida Railroad Company from taxation as claimed by complainant in its bill; defendant further answering says that he is advised that such exemption did not pass by the several mesne conveyances to the plaintiff, for this defendant avers that by said acts there was only exempted the capital stock, railroad and other property of the Alabama and Florida Railroad Company; and defendant avers that with the exception of a part of the right of way, and probably a portion of the road-bed, and perhaps a few other insignificant items, that the railroad and property upon which the taxes are now sought to be collected are not the same property which was the property of the said Alabama and Florida Railroad Company, to which complainant's bill claims the exemption attached; and defendant avers that complainant has not proffered or tendered the taxes upon any part of the taxed property.

Defendant says as to the 9th paragraph of said complainant's bill, he denies that by the alleged purchase from the Pensacola Railroad Company the complainant became entitled to all the rights, property, privileges, franchises and immunities of the said Alabama and Florida Railroad Company, the Pensacola and Louisville Railroad Company and the Pensacola Railroad Company, under the various acts incorporating said companies and acts amendatory of the same, as by complainant in his bill alleged. On the

contrary he is advised and charges that under the laws of Florida the complainant acquired nothing more than the property purchased by it from the chartered Pensacola Railroad Company, and acquired none of the Pensacola Railroad Company's franchises, privileges or immunities as a railroad corporation, duly chartered, empowered to exercise the franchises and enjoy the privileges and immunities thereof in the State of Florida.

Defendant further answering denies that the said railroad together with its locomotives, passenger, freight and other cars, machine shops, upon which taxes are claimed and demanded by the said State of Florida and county of Escambia, including the property levied upon by this defendant, are exempt from taxation as alleged in the 10th paragraph, of complainant's bill.

And defendant further answering says as to complainant's allegation and charge in the 11th paragraph of its said bill, the same is not true, for he says assessments were made of said railroad and property for the years 1879 and 1880, and he is authorized in demanding taxes for said years.

Defendant further answering says that as to the allegations of the complainant in the 12th paragraph of its bill, he claims all the benefits of a demurrer thereto, but says that the engines and cars levied upon by him are only a very small portion of the engines and cars owned by complainant, and the sale of them can and will not greatly impede or embarrass the business of complainant, and cannot and will not cause it irreparable injury.

And as to the charge that this respondent is without property and unable to respond to complainant in a suit at law for damages, respondent says he is acting under express and direct orders of the State of Florida, given by the Governor and Comptroller, under directions from its Legislature ; and that the State of Florida is in nowise unable

to respond to complainant for any damages the complainant may suffer from the faithful execution of the laws and will of the State.

And as to the charge that the proceedings complained of will tend to cloud the title of complainant, the defendant says that the property levied upon to be sold is personal property only, and defendant is advised that this court, as a court of equity, has no jurisdiction to and will not enjoin the sale of personal property for the purpose of collecting taxes upon any of the grounds set forth in complainant's bill of complaint, and especially not upon the pretence that such sale will " cloud " complainant's title.

And defendant further answering denies all and all manner of unlawful combinations and confederacy wherewith he is by said bill charged. Without this that there is any other matter, cause or thing in the said complainant's bill of complaint contained material or necessary for this defendant to make answer unto, and not herein and hereby well and sufficiently answered, confessed, traversed and avoided or denied, is true to the knowledge or belief of this defendant; all which matters and things this defendant is ready and willing to aver, maintain and prove, as this honorable court shall direct, and humbly prays to be hence dismissed with his reasonable costs, &c.

On the same day the cause was heard on bill and answer on motion of complainant for a temporary injunction, and an order made enjoining the defendant from selling the property levied on until the further order of the court, provided the complainant should give bond in the sum of $15,000, conditioned to pay the taxes and all costs of this proceeding in case the injunction should be finally dissolved. On March 27, 1882, a replication was filed by complainant. On the 31st day of the same month, on motion of complainant, after notice being given to defendant,

the above order was modified so as to provide that the injunction should take effect upon the giving of the bond thereby required, " conditioned to pay the taxes claimed by the defendant as Collector of Revenue, or so much thereof as may be adjudged to be payable, and all costs of this proceeding, in case the said injunction be finally dissolved and the plaintiff adjudged not to be exempt from taxes as by the bill claimed." A bond was given, conditioned accordingly, and on the 14th day of April the Collector of Revenue appealed from said orders.

Section 18 of the Internal Improvement Act approved January 6, 1855, is as follows : " The capital stock of any railroad company accepting the provisions of this act shall be forever exempt from taxation, and the roads, their fixtures and appurtenances, including workshops, warehouses, vehicles, and property of every description needed for the purpose of transportation of freight and passengers, or for the repair and maintenance of the roads, shall be exempt from taxation while the roads are under construction and for the period of thirty-five years from their completion ; and that all the officers of the companies, the servants and persons in the actual employment of the companies, be and are hereby exempt from performing militia duty, working on public roads and serving as jurors."

Section 4 of the act approved December 14, 1855, is as follows: "A line of railroad to be constructed from the city of Pensacola, or any other point or points on the waters of Pensacola bay, or the waters of the St. Andrews bay, to the north line of the State leading in the direction of Montgomery, Alabama, shall be considered as proper improvements to be aided from the Internal Improvement Fund in the manner provided for, or may hereafter be provided for, in 'An act to provide for and encourage a liberal

system of internal improvement in this State,' approved January 6th, 1855."

Section 1, Article XII., Constitution of 1868, is as follows: " The Legislature shall provide for a uniform and equal rate of taxation, and shall prescribe such regulations as shall secure a just valuation of all property both real and personal, excepting such property as may be exempted by law for municipal, educational, literary, scientific, religious or charitable purposes."

Section 24, Article XVI., of the same Constitution was as follows: " The property of all corporations, whether heretofore or hereafter incorporated, shall be subject to taxation, unless such corporation be for religious, educational or charitable purposes." And in 1875 it was amended to read as follows: "The property of all corporations, whether heretofore or hereafter incorporated, shall be subject to taxation, unless such property be held and used exclusively for religious, educational or charitable purposes."

Section 18 of an act entitled an act to amend an act entitled an act to incorporate the Pensacola and Louisville Railroad Company, approved July 16, 1868, Chapter 1915, Laws of Florida, approved February 4, 1872, is as follows: "*Be it further enacted*, That the Pensacola and Louisville Railroad Company having become the assignee of the Alabama and Florida Railroad of Florida, and the franchises of the said corporation, and being in possession of and operating the said line of road, which corporation was exempt from taxation for a limited period, the said Pensacola and Louisville Railroad Company, and its property now owned or hereafter to be acquired, shall also be exempted from taxation during the remainder of said period."

For a full understanding of this case, so far as it involves the points decided in Gonzalez vs. Sullivan, 16 Fla., 791, a

careful consideration of the facts and opinion in the latter case is necessary.

The other facts are stated in the opinion.

*E. A. Perry* for Appellant.

The injunction should not have been granted. The Alabama and Florida Railroad Company's property even was not exempt.

This court having held as to the point brought before it in the case of Sullivan vs. Gonzalez that the Legislature intended to exempt the property of Alabama and Florida Railroad Company, thus differing from the exhaustive argument of the Attorney-General, no argument or additional authority will be offered upon that point.

Admitting then that such was the intention of the Legislature, the Legislature had not the constitutional power to carry out its intention. And Section 18 of Internal Improvement Act is unconstitutional. The Constitution then in force commanded : " The General Assembly shall devise and adopt a system of revenue having regard to an equal and uniform mode of taxation, to be general throughout the State." Const., Art. 8, Sec. 1, Thomp. Dig., 86.

This precluded the Legislature from doing anything that would destroy the uniformity of taxation. The purpose of the people is clearly indicated in their Constitution, and the Legislature is inhibited from any act that might frustrate or disappoint that purpose. " When a statute (or Constitution) limits a thing to be done in a particular mode it includes a negative of any other mode." Raleigh & Gaston Railroad Company vs. Reid, 13 Wall., 269–70.

The power to exempt certain railroad companies or certain specific property, without exempting all railroad companies and all property of the same class, is as much inhibited by that clause in the Constitution as if it had been an

express denial of the power. " The power need not be expressly inhibited, for there are but few positive restraints upon the legislative power contained in the instrument." " Every positive direction contains an implication against anything contrary to it, or which would frustrate or disappoint the purpose of that provision." (Potter's Dwarris on Statutes, p. 64, quotes from Denio C. J. in The People vs. Draper, 15 N. Y., 532, 543–4.) What could more palpably " frustrate " and " disappoint " the equal and uniform system of taxation required *to be general throughout the State* than an exemption of certain privileged corporations or certain privileged property in a certain part of the State ? As to what the terms " equal," " uniform " and " to be general throughout the State" mean, and how this inhibition affects the validity of the 18th Section of Internal Improvement Act and every special exemption from taxation, see the cogent and conclusive reasoning of this court in McConihe vs. *ex rel.* McMurray, 17 Fla., 238, 266, *et seq.*

Apply this reasoning and it is conclusive of the invalidity of section 18, or any attempt of the Legislature to grant special exemption from taxation, and disposes of the whole matter of special exemptions. Upon the question of " equality" and " uniformity " and " to be general throughout the State, see also Gilman vs. The City of Sheboygan, 2 Black, 510 ; Knowlton vs. Supervisors of Rock Co., 9 Wis., 410, 423.

That the motive of the Legislature was good cannot affect the question. Weeks vs. The City of Milwaukie, 10 Wis., 242, 263–4; Cooley's Const. Lim., marg. p. 501, top p. 624, *et seq.*, and cases cited, and marg. p. 515, top p. 640, and cases cited in note 3 ; Cooley on Taxation, p. 132, *et seq.*, and cases cited ; also cases cited by this court in McConihe vs. *ex rel.* McMurray, 17 Fla., 266, *et seq* ; also People vs. Eddy, 43 Cal., 331; Lick vs. Austin, ib., 590;

Primm vs. Belleville, 59 Ill., 142; Bureau Co. vs. Chicago, &c., Railroad Co., 44 Ill., 229 ; New Orleans vs. Home Ins. Co., 23 La. An., 449.

The clause in the Constitution was not a grant, but a limitation of power. People vs. McCreery, 34 Cal., 432, 451.

Section 2 of Article XI., Constitution of 1845, by *expression* (by implication at least) of the manner by which internal improvements were to be encouraged and aided, viz : by " such funds as may be *appropriated*," *excludes* the idea that they could be aided by any exemption which would frustrate and disappoint the purpose of the people as set forth in Section 1, Article VIII. Had it been intended to authorize aid by exemption such as attempted in Section 18, Internal Improvement Act, such intention would most probably have been expressed in Article XI. A consideration of Article XI. greatly strengthens the position taken by the State that section 18 is an usurpation of power and void.

There has been no little disposition to consider the Internal Improvement Act as greater than, and a limitation of the Constitution, and by no few the inquiry has apparently been—not what part of the Internal Improvement Act frustrates the purpose of the Constitution—but *vice versa*— what part of the Constitution was abrogated by the Internal Improvement Law.

In order to support complainant's claim of an irrepealable contract it would have the court hold that Section 1, Article VIII. of the Constitution of 1839–45, was abrogated, and that the present Constitution and the legislation thereunder are subordinate to Section 18 Internal Improvement Act ; in other words, complainant arrays a section of a statute against two Constitutions and all the presumptions. In this situation the ordinary disinclination of the court to

hold a legislative act *ultra vires* is turned against the complainant, and it will require a conviction clear of the least shadow of a doubt to sustain section 18. And unless complainant, upon which the whole burden is cast, can satisfy the mind of the court so that not the least doubt lingers therein, the court must and will follow its inclination and at the same time the lead of duty and by sustaining both Constitutions restore the equal and exact justice intended to be secured by an equal and uniform system of taxation.

As to the injustice of special exemptions, even when not inhibited by constitutional restrictions, see language of Justice Cooley in The People vs. Town of Salem, 20 Mich., 452.

To have made the exemptions binding upon the State as a contract, it must have been a part of the original charter or contract between the State and the Alabama and Florida Railroad Company—must have been *contemporaneous* with the charter contract. None of the decisions of the Supreme Court of the United States but hold this, and all the decisions rest upon the doctrine in the Dartmouth College case. (East Saginaw Manf'g Co. vs. City of Saginaw, 19 Mich., 259, 282–3.) Thus we find that the exemption in Wilmington Railroad vs. Reid, 13 Wal., 264, was contained in its charter, which it is too late to contend not to be a contract. If one of the contracting parties, after the contract is fully consummated, promises to do more than he contracted to do, that is a gratuitous promise, is a *nudum pactum*. Such was the position of the Legislature and the Alabama and Florida Railroad Company, and if the Legislature had had the constitutional power to make the promise it was without legal consideration and did not bind the State, and as such cannot be invoked against present Constitution and legislation thereunder. Tucker vs. Ferguson, 22 Wal., 427, §§3 and 4, head note and 574–5, and cases

there cited; West Wisconsin Railroad Company vs. Board of Supervisors, 3 Otto, 595.

To encourage the system of internal improvements was a motive for passing the law but not a legal consideration of a contract. Christ Church vs. Phila., 24 How., 300–1.

It is evident the Legislature in 1855 intended the exemption as a favor to such companies as might come within the provisions of the act, to be continued for thirty-five years, should no subsequent Legislature withdraw it; and not as a contract with the companies binding upon subsequent Legislatures. The favored companies were required to do nothing more than by their charter contracts it was their duty to do.

To sustain the claim that it is a contract and irrepealable by the people or their Legislature, the railroad companies claim the Internal Improvement Act must be construed as an amendment of their respective charters, and unless it can be so construed all claim of contract must fall. Their charters are private statutes, and, since the Dartmouth College case, are contracts binding upon the State and subsequent Legislatures. Is the Internal Improvement Act an amendment to their charters? That is a public statute certainly, and the court must construe it by aid of all means to which it can resort. Was such the intention of the Legislature? If so, the Legislature would have required all to be done necessary under the Constitution to make it valid as an amendment or part of the charters of the several railroad companies.

If in the act itself it were designated as such it would be presumed that such constitutional requirements had been complied with. In the absence of any such indication of its character the court will not assume that it possesses such character; and unless it finds that the requirements of the Constitution, Article 12, Section 2, (Thomp. Dig., 268)

necessary to give it such character were complied with, it must hold that it was not the intention of the Legislature it should have that character. Does any one imagine all the railroad companies within the system gave the three months' notice previous to its passage, that by the Internal Improvement Act their charters were to be so amended, altered and added to ? If not, the Legislature had no constitutional power to so amend, alter and add to their respective charters, and if such notice had been given then the act must have had the assent of at least two-thirds of each House. Thompson's Digest, 268.

This being a public statute, and the court being called upon to determine its character and to ascertain whether it has or was intended to have the character of an amendment of the charters of the railroad companies, the court may resort to every means within its reach ot informing itself, and may resort to original records, as it must look outside of the language of the act, and unless the steps necessary to an incorporating act or amendment of one were taken the act cannot be construed to be of such character. Gardner vs. Collector, 6 Wall., 499, 508-9.

And all presumptions being against this being a contract binding upon the State and the people and their Legislatures, (Tucker vs. Ferguson, cited *supra*,) unless it appears affirmatively that it was the intention of the Legislature to make the exemption a part of the railroad charters and thus a contract, certainly a doubt arises whether such was the intention, and " if a doubt arise as to the intent of the Legislature that doubt must be solved in favor of the State." The Delaware Railroad Tax, 18 Wall., 206, 226.

As to any claim of exemption upon any other than the technical ground that the charter is a contract, the court's attention is invited to the language of the Supreme Court

of Wisconsin in Whiting vs. Sheboygan, &c., Railroad Company, 25 Wisconsin, 167.

It seems clear then—

1st. That the exemption, if intended as a contract, was without constitutional authority and void.  2d. That it cannot be presumed that it was intended as a contract, and therefore if it had any validity it was a favor granted by reason and upon motives of public policy, which the people, in convention in 1868 or by subsequent Legislatures, could withdraw.

These questions not having been raised by preceding Tax Collectors who have brought the question of exemption before this court, the court heretofore has not been called upon to consider them.

The State itself, through its Legislature and Executive, in behalf of the people of the whole State crying out against the burdens of taxation, now, as it has a right and as it is its duty, raises and insists upon the questions which seem fatal to all claims of exemption on the part of the several railroad companies from their proper share of the burdens of State and county government.

We insist that the property of the Alabama and Florida Railroad Company even was not constitutionally exempt; that if constitutionally exempt it was not by contract, and that since the Constitution of 1868 the Alabama and Florida Railroad Company could not claim any exemption from taxation.

But if driven from this seemingly impregnable position, if the Alabama and Florida Railroad Company could claim the exemption, the complainant here cannot.  In considering this point the State is not unmindful of the language of this court in Sullivan vs. Gonzalez, but that case came before the court very differently from this.  Gonzalez had no warrant to raise the questions raised here; that case

rested solely upon demurrer, and Gonzalez, by his demurrer and otherwise, admitted much that the State now denies. That case was decided at a time when the Supreme Court of the United States seemed, more than it now is, inclined in the direction which this court felt constrained to follow. This court was following what then seemed the bent of the Supreme Court of the United States, the final arbiter of all questions of exemption by virtue of legislative contract; that such was the inducement to this court's decision in that case, and the decision in Atlantic and Gulf Railroad Company vs. Allen we see from the language used by this court in the latter case (p. 663, 15 Fla.,) not unlike the language of the Chief-Justice and Justices Field and Miller in Washington University vs. Rouse, 8 Wal., 441. The inclination of the Supreme Court of the United States has evidently changed and is changing, and that court is less " quick to discover a contract that may be protected," and less " slow to perceive that what are claimed to be contracts are not so, by reason of the want of authority in those who profess to bind others." (8 Wal., 442.) As marked instances see Morgan vs. Louisiana, 3 Otto, 217 ; R. R. Cos. vs. Gaines, 7 Otto, 607, 711 ; East Tenn. V. & G. R. Co. vs. Hamblin County, 12 Otto, 273 ; and still more recent case of Wilson vs. Gaines, cited *infra*.

The exemption here claimed depends upon legislative language almost literally and in substance identical with the language in a case recently before the Supreme Court of the United States from Tennessee.

Compare the language—

The Tennessee case : The capital stock of said company shall be forever exempt from taxation, and the road, with all its fixtures and appurtenances, including work-shops, ware-houses and vehicles of transportation, shall be exempt

from taxation for the period of twenty years from the completion of the road, and no longer.

This case: The capital stock of any railroad company accepting the provisions of this act shall be forever exempt from taxation; and the roads, their fixtures and appurtenances, including work-shops, ware-houses, vehicles and property of every description needed for the transportation of freight and passengers or for the repair and maintenance of the roads, shall be exempt from taxation while the roads are under construction, and for the period of thirty-five years from their completion.

A holder of the property under a foreclosure sale and sundry mesne conveyances, as in this case, claimed the benefit of this exemption. The Supreme Court of Tennessee denied the claim, holding that the privilege of exemption was not one that passed from the original company to the then holder; and the Supreme Court of the United States hold that the original company's " immunity from taxation was a personal privilege, and not transferable except with the consent or under the authority of the Legislature which granted the exemption, or some succeeding Legislature; and that such exemption does not necessarily attach to or run with the property after it passes from the owner in whose favor the exemption was granted." (Wilson vs. Gaines, 13 Otto, 417, 421.) The court evidently construing the language as meaning " the capital stock of the said company shall be forever exempt from taxation, and the road," &c., (of said company.)

It will be seen that in the Tennessee case, as in this, there figured an internal improvement system. That case was much stronger against the State than this, inasmuch as in that there was what could not exist under the Constitution of 1868, a pretence of legislative assent to transfer of exemption.

In the case of New Jersey vs. Wilson, 17 Cranch, 164, the property was real estate and immovable, and it was easy for the Legislature to intend that the exemption should attach to it, and its intention could be made effectual; but in the case of Morgan vs. Louisiana the Supreme Court of the United States dispel any presumption of such legislative intention in the case of property like the property of the Alabama and Florida Railroad Company. 3 Otto, 217.

I find no recent case in which the Supreme Court of the United States have held otherwise than that the exemption from taxation of *railroad property* is a " personal privilege of the corporation to which it was granted, and does not pass to the purchaser of the railroad, or to mortgagees who become the owners by a foreclosure." Though I find many cases in which it is held that " the Legislature may, *unless restricted by the State Constitution*, allow the transfer of the exemption to a new corporation which succeeds to the property of the exempted." Pierce on Railroads, New Edition of 1881, p. 486.

This legislative allowance of transfer must of course rest upon the same grounds as to authority and consideration as a new grant; and no argument is necessary to show that under the Constitution of 1868 the Legislature of Florida is so " restricted " that it could not " allow " such transfer.

For, by allowing such transfer, it would as effectually " frustrate " and " disappoint " the purpose of that Constitution (which purpose is indisputably that all railroad property in the State shall be taxed) as it would by an attempt to create or grant a new exemption. So if it could be held that the Constitution of 1839–45 authorized the granting of the exemption, it certainly cannot be claimed that the Constitution of 1868 does not restrict the Legislature from perpetuating the exemption by allowing the transfer thereof to a new corporation which succeeds to the property of the

exempted one. There is no claim of legislative allowance of transfer of exemption to the complainant in the case at bar, and no such allowance could have been constitutionally made since 1868 to any of the corporations which have preceded complainant as purchasers of the property of the exempted corporation.

However the provision for uniform system of taxation in old Constitution may be construed, that the necessary legislative authority for the transmission of any exemption from the Alabama and Florida Railroad Company to its successors, and through them to the Kentucky corporation, cannot be sought under the present Constitution is clear. Trask vs. Maguire, 18 Wal., 391; 7 Otto, cited *supra*, 709–10.

How the franchises, privileges and immunities by Florida Legislatures entrusted to a Florida railroad corporation could, by execution, foreclosure and private sale, become a trust in the hands of a Kentucky corporation, is a problem difficult to solve.

If we admit that a franchise could be thus transmitted, by what legal mode of conveyance, other than by authorized legislative allowance or grant, could an immunity, an exemption be transferred?

If the exemption attached to the property itself as to the lands in the New Jersey case, " which may well be referred to as an ercise of the treaty-making power," (19 Mich., cited *supra*,) then, when during the war that property moved into Alabama, (where it in fact did go and stay,) the exemption went with it; and there the over-burdened tax-payers of Florida pray it may stay and never return to curse us with the discontent and dissatisfaction engendered by the feeling that an increased weight is imposed upon every citizen to relieve from any burden an affluent foreign corporation.

The people of Florida, feeling the great hardship and inequality wrought by the exemption of these railroad corporations from their proper share of the burdens of government, their Legislature and their Executive appeal to this, their own court, for such an adjudication as will either afford them relief or enable the questions involved to be submitted to the Supreme Court of the United States for final arbitrament.

The complainant claims that there is here an irrepealable contract, and that it enures to its benefit. This the people of Florida have most solemnly denied in their Constitution of 1868 and by every department of their government except this honorable court. A very able Judge of the United States Circuit Court, now upon the Supreme Bench, has once adjudged the question in favor of the State as to this very railroad. Is there not in all this (if nothing in the argument and authorities here submitted) something that does or should create in the mind of this court a doubt, of which it must give the State the benefit?

By doing so neither the complainant nor the other corporations claiming similar exemption will be in anywise prejudiced, for if there be such a contract its protection is peculiarly the prerogative of the Supreme Court of the United States. Only by this court's decision for the State —*pro forma* though it be considered—can all possibility of ultimate wrong be avoided and right be finally determined. Even before that final tribunal the least doubt would solve this matter so vital to the welfare of Florida in favor of Florida. 18 Wal., cited *supra*, 226.

This honorable court has the power to prevent the question from reaching that final appellate jurisdiction; but is there not danger that by the exercise of that power it may be the possible instrument of perpetuating what the people of Florida claim (and are ready to aver and prove before

that final arbiter) to be, not a forever binding contract by which duly empowered agents have bartered away a sovereign attribute to be passed from hand to hand like an ordinary chattel, without let or hindrance of the State, and finally to be held and enjoyed by a foreign corporation; but an unrighteous inequality, the offspring of legislative usurpation, maintained by a selfish and soulless disregard of that great principle which has been embodied in every Florida Constitution—that the burden of taxation shall be equally and uniformly imposed upon all who enjoy the protection of the government.

*John W. Malone* on same side.

A corporation created under the laws of Florida since the adoption of the Constitution of 1868 for any purpose other than religious, educational or charitable, cannot obtain immunity or exemption upon any of its property. Sec. 24, Article 16, Constitution of 1868.

Such corporation, upon accepting its charter with full knowledge that the organic law which authorizes its creation at the same time declares that its property shall be subject to taxation, thereby assents to its property being taxed.

Indeed, one of the terms under which such corporation was created and granted franchises, or, to put it more accurately, " one of the stipulations of the contract between such corporation and the State of Florida," was that the property which it might acquire should be subject to taxation, and thus contribute to the support of the government which created it. Therefore, when the property of the Alabama and Florida Railroad Company, which was impressed with an immunity or exemption from taxation under the 18th Section of the Internal Improvement Act, was acquired by the Pensacola and Louisville Railroad Com-

pany, a corporation created under and by virtue of the Constitution and laws of the State of Florida of 1868, it became *eo instanti* subject to taxation with the assent of said company.

The statute, therefore, which imposed a tax upon said property after it was acquired by the Pensacola and Louisville Railroad Company or its successor, the Pensacola Railroad Company, *with the assent of said companies*, did not impair the obligation of a contract or contravene any constitutional limitation, and such assent may be either expressed or implied. Mobile & M. R. Co. vs. Steiner, 61 Ala., 559 ; V. C. R. Co. vs. V. C. R. Co., 34 Vt., 51 ; Lanman vs. L. V. R. Co., 30 Pen. St., 42 ; Sneed vs. I. P. C. Co., 11 Ind., 104 ; 47 Maine, 34.

The Louisville and Nashville Railroad Company acquired this property from the Pensacola Railroad Company with notice that it was subject to taxation with the assent of said Pensacola Railroad Company, and are bound by such assent.

*G. A. Stanley* for Appellee.

The appellee (the complainant below) rests its claim to exemption from taxation on the following grounds:

1st. By the 4th Section of the Internal Improvement Act of 14th December, 1855, a road leading from Pensacola to the State line, in the direction of Montgomery, was declared a proper improvement to be aided by the Internal Improvement Fund.

The Alabama and Florida Railroad Company undertook to build this line of railroad, and on the 12th of March, 1856, notified the Board of Internal Improvement of the acceptance of the provisions of the Internal Improvement Act, and afterwards completed its road in accordance with the provisions of said act.

This line of railroad, by several mesne conveyances, which are set forth in the bill and exhibits attached, became the property of the appellee.

It is upon this line of railroad and the property connected therewith that the tax is levied, the collection of which appellee seeks to restrain.

Appellee contends that the exemption from taxation passed as an incident attached to the property. Gonzalez vs. Sullivan, 16 Fla., 791.

2d. But appellant contends that the 18th Section of the Internal Improvement Act of January 6, 1855, is unconstitutional. This question has been so often before the courts that it is no longer debatable. Atlantic and Gulf R. R. Co. vs. Allen, 15 Fla., 637; Gonzalez vs. Sullivan, 16 Fla., 791.

3d. It is also claimed by the appellant that the exemption is gratuitous, and did not preclude the people from subjecting the property to the same burdens as are imposed on other corporations. It is not true that the exemption from taxation was gratuitous. It was one of the terms of the contract between the Alabama and Florida Railroad Company and the State; and when said company had completed its road the exemption could not be withdrawn by the State. Wilmington Railroad vs. Reid, 13 Wallace, 266; Atlantic and Gulf R. R. Co. vs. Allen, 15 Fla., 637.

4th. The appellant further insists that even if the property was exempt from taxation as the property of the Alabama and Florida Railroad Company, such exemption did not pass to the appellee. In this connection it is only necessary to consider whether the property has passed to the appellee. The appellant cannot deny that it is the property of the appellee, for he claims to hold it liable for taxes as appellee's property. The Pensacola and Louisville Railroad Company was empowered to sell the property to any rail-

road company in or out of the State.   Acts of 1872, p. 85.

The Pensacola Railroad Company succeeded to all the rights, privileges, franchises and immunities of the Pensacola and Louisville Railroad Company.   Acts of 1877, p. 130.

The right to exemption from taxation passed with the property to the appellee.  Gonzalez vs. Sullivan, 16 Fla., 791.

5th.  But appellant alleges that the property on which the taxes are sought to be collected, except a small part of the right of way and a portion of the road-bed, are not the same property which was the property of the Alabama and Florida Railroad Company.

This denial is evasive, and does not meet the allegations of the bill.   The bill and exhibits show that the line of railroad formerly owned by the Alabama and Florida Railroad Company has passed to the appellee.   It is alleged in the bill, and not denied by the answer, that it is on this line of railroad, and the property connected therewith, that the taxes are assessed, the collection of which are sought to be restrained.   The exemption is claimed as incident to this road.

6th.  Appellant further insists that the temporary injunction was improperly granted, because all the material allegations of the bill are denied by the answer.

It will be seen by examining the answer that it contains no direct denial of any matter of fact contained in the bill. The appellant demands proof of notice of acceptance of the provisions of the Internal Improvement Act given to the Board of Trustees by the Alabama and Florida Railroad Company ; also that the road was constructed in accordance with the requirements of the Internal Improvement Act.   The bill alleges that all this was done, and in the absence of any denial this is sufficient.   The appellant alleges that the property on which the taxes are sought to.

be collected is not the same property which was the property of the Alabama and Florida Railroad Company. This is evasive, and does not meet the allegations of the bill. All the other allegations contained in appellant's answer are conclusions of law, and would be proper on demurrer.

7th. Appellant further insists that appellee has no remedy in equity. The interposition of courts of equity in cases of this kind by injunction would seem to be too well established to be questioned.

"And it may be laid down as the established doctrine of the courts that the attempted enforcement of a tax against property which has been exempted by proper legislative authority from the burdens of taxation, constitutes a grievance of so irreparable nature as to merit preventive relief by injunction." 1 High on Injunctions, Sec. 530 ; Ill. Cen. R. R. Co. vs. County of McLean, 17 Ill., 291 ; Mobile & Girard R. R. Co. vs. Peebles, 47 Ala., 317 ; Miss. River R. R. Co. vs. Morriss, 13 Kan., 302.

8th. Appellant claims that the injunction should not have been granted, because the bill was not sworn to.

While it is usual to grant an injunction only upon a bill duly verified, the oath may be dispensed with if the confidence of the court can be otherwise obtained.

" Thus, documentary evidence establishing complainant's equities and right to relief will suffice to warrant the court in granting an injunction, and such may be presented by properly verified copies of private instruments, or of records, where such is the appropriate mode of proof." 2 High on Injunctions, Sec. 1572 ; Negro Charles vs. Sheriff, 12 Md., 274 ; Youngblood vs. Schamp, 2 McCartey, 42 ; Nusbaum vs. Stein, 12 Md., 315 ; 3 Bland's Ch., 125.

The appellant's title is shown by the exhibits attached to the bill, and for the purpose of a preliminary injunction, at least, the equities are sufficiently clear to entitle appellee to the relief asked.

The granting of an injunction is a matter of sound judicial discretion.

Where the danger or injury is of a character which cannot be easily remedied if the injunction is refused, and there is no denial that the act is contemplated, the temporary injunction will be granted, unless the case made by the bill is satisfactorily refuted by the defendant. U. S. vs. Duluth, 1 Dillon, 469.

9th. Appellee insists that the injunction was properly granted.

The action of the court below should not be reversed, unless it appears that there was an abuse of judicial discretion. 2 High on Injunctions, Sec. 1696 ; DeGodey vs. Godey, 39 Cal., 157; Coolot vs. Cent. Pac. R. R. Co., 52 Cal., 65 ; Bonaud vs. Genesi, 42 Ga., 639 ; Nevin vs. Printup, 59 Ga., 830 ; 3 Bland's Ch., 125.

If the present proceeding were a motion for a dissolution of the injunction upon the answer it could not prevail, because none of the matters of fact on which appellee's right to relief depends are denied in the answer.

The granting and continuing of injunctions rests in the discretion of the court, to be governed by the nature and circumstances of the case. Carter vs. Bennett, 6 Fla., 214 ; Allen vs. Hawley, Id., 142.

On a motion to dissolve everything is to be presumed against the defendant in respect to every matter which he could answer directly and has not answered. The court will look to such facts of the answer only as are responsive to the bill. See Yonge vs. McCormick, 6 Fla., 368, and authorities there cited.

These are adjudications upon motion to dissolve, but it is not perceived that substantial difference exists between it and the case of a motion or application for an injunction after answer. Yonge & Bryan vs. McCormick, 6 Fla., 368 ;

see also Plipper vs. Knaffle, 2 Tenn. Ch., 238 ; Owen vs. Brien, 2 Tenn. Ch., 295 ; Nash. Bk. vs. Meyer, 3 Tenn. Ch., 238.

The above rule should be observed when the appeal, as in this case, is from an order granting an interlocutory injunction.

The court below committed no error, and its decree should be affirmed.

[☞ The act of 1877, referred to in brief of Mr. Stanley, provides as follows : " That the said Pensacola Railroad Company be and it is hereby authorized and empowered to acquire by purchase and assignment all the property, rights, franchises, privileges and immunities of the Pensacola and Louisville Railroad Company, a corporation created by an act of the General Assembly of the State, approved July 16, A. D. 1868, whether the same were acquired under the laws of the States of Florida or Alabama or the laws of the United States, or as the assignee and successor of the Alabama and Florida Railroad Company ; and upon completion of the said purchase and assignment the said Pensacola Railroad Company shall be deemed in law and equity to be fully invested with and entitled to all the said property, rights, franchises, privileges and immunities of said Pensacola and Louisville Railroad Company, as though the same were originally granted to or acquired by the said Pensacola Railroad Company."—REPORTER.]

MR. JUSTICE WESTCOTT delivered the opinion of the court.

The material question involved in this case, the one which the State and the Louisville and Nashville Railroad Company ask consideration of here, is whether the line of railway extending from Pensacola bay to the north line of the State of Florida, leading in the direction of Montgom-

ery, Ala., its fixtures and appurtenances and property of every description, is exempt from taxation for the period of thirty-five years from its completion. This question was involved in the case of Gonzalez vs. Sullivan, 16 Fla., 791, and with the lights then before us we held that it was.

After careful investigation we there held that the exemption allowed under the 18th Section of the Internal Improvement Act was not a privilege or immunity granted to the corporation originally owning the road, but a privilege annexed by the terms which created it, and the circumstances under which it was made, to the road and property appurtenant thereto, as distinct from a franchise privilege or right restricted in its beneficial operation to the corporation which claimed to own the road. We held that it was not a privilege or immunity appurtenant only to the then ownership of the road, but that the immunity attached to the *road*, at the time it was made a part of the " system " of internal improvements of this State, and that in order to complete the system, and encourage any corporation owning the road to construct it, an exemption of the property for thirty-five years after completion was intended by the Legislature. We held that the exemption attached to the *rem ;* that such exemption vested in contract followed the property ; that a subsequent levy and collection of taxes would impair the obligation of the contract ; and that in obedience to the limitation of the Constitution of the United States, upon the power of the State in that behalf, the collection of a tax upon the road and its appurtenances should be enjoined. As the matter was then presented this was our conclusion. We cannot state more clearly the reasons given for that conclusion then than they are stated in the case referred to, and we refer to that case for the basis of our then views to the effect stated. The question, as we conceived it to be, was whether it was an immunity from

taxation attached to the property, believing, as we did, that it would make no difference as to the character of the party in whose favor it was to operate.

This case is now presented to us under circumstances in some respects unlike those brought to our attention in the case of Gonzalez vs. Sullivan. It is insisted:

First. That the 18th Section of the Internal Improvement Act, which grants the immunity from taxation, was in conflict with the constitutional limitations upon legislative power then existing under the Constitution of this State in the matters of taxation and the amendment of charters of corporations.

Second. That since the decision of this court in the case stated, the Supreme Court of the United States has expressed views in conflict with our conclusion in that case, and that in deference to that court, the admitted final jurisdiction to determine questions connected with the matter of the obligation of contracts, this court should follow that decision. In addition to this, it is insisted that this case is here at the instance of the legislative and executive departments of the State government, and that, by their action, they have affirmed that this road and its appurtenances are subject to taxation.

To the first question:

The provisions of the Constitution of 1839 of this State in reference to this subject were as follows:

Section 2, Article XI.—"A liberal system of internal Improvements being essential to the development of the resources of the country shall be encouraged by the government of this State, and it shall be the duty of the General Assembly, as soon as practicable, to ascertain by law proper objects of improvement in relation to roads, canals and navigable streams and to provide for a suitable application of such funds as may be appropriated for such improvements."

Section 2, Article XIII.—"The General Assembly shall pass no act of incorporation or make any alteration therein unless with the assent of at least two-thirds of each House, and unless public notice in one or more newspapers in the State shall have been given for at least three months immediately preceding the session at which the same may be applied for."

Section 13, Article XIII.—"The General Assembly shall not pledge the faith and credit of the State in aid of any corporation whatsoever."

Section 1, Article VIII.—"The General Assembly shall devise and adopt a system of revenue having regard to an equal and uniform mode of taxation to be general throughout the State."

By reference to the charter of the corporation owning this road at the time it accepted the provisions of the Internal Improvement Act of January 6, 1855, Chapter 610, Laws of Florida, and to the Internal Improvement Law, it will be seen that the latter act operated to amend the charter in many material respects. We think it, therefore, by no means clear, *looking alone* to the restrictions contained in Section 2 of Article XIII. of the Constitution, that the Internal Improvement Act was constitutional so far as it proposed to amend the charters of the several corporations accepting its provisions. When, however, this clause, Section 2, Article XIII., is construed with Section 2, Article XI., we think there can be no doubt of the constitutionality of the Internal Improvement Act so far as this matter is concerned. By that clause (Section 2, Article XI.,) it is made the "duty of the General Assembly, as soon as practicable, to ascertain by law proper objects of improvement in relation to roads, canals and navigable streams," and the government of the State is directed to encourage a liberal *system* of such improvements. Such improvements are equally ac-

complished through the instrumentality of corporations having the franchises to operate such roads, to collect tolls and the other franchises usually granted by the State to corporations of this character. At the time when the General Assembly proposed to inaugurate this system and obey the command of the Constitution, the right to construct the roads which it was proposed to embrace within the system had been given to several corporations. A very proper, perhaps the best, method of discharging the duty was to aid these corporations in constructing these roads, and if the Legislature was prohibited from using this method on account of the provisions of Section 2, Article XII., of the Constitution, it is clear that the discharge of its duty so far as the use of this method was concerned would have been controlled by the discretion of the corporations owning them. In other words, the Legislature could not have carried out its plain duty under the Constitution unless and until these corporations gave this notice. And as the notice required must, as a matter of course, indicate the nature of the amendments desired, it would result that the Legislature could have devised only such a system, and extended only such aid, as the corporations themselves " applied for." No such limitation or condition was attached by the Constitution to the carrying out of this great public duty and trust by the State. It was not intended that the State was to be thus limited in its powers by the discretion of corporations.

The one clause here, Section 2, Article XI., contemplated legislation as general in its operation and character as to the corporations embraced within it as the system devised, measured by its comprehensiveness and necessities, required. As to such legislation no notice was required. The other clause, Section 2, Article XIII., contemplated amendments desired by a particular corporation in matters concerning its

relations to its stockholders and the people, disconnected from such legislation as was materially connected with and concerned the general system which it was the duty of the State to inaugurate and encourage.

Again, if the Internal Improvement Act in the matter of exemption from taxation is in conflict with the limitation contained in this clause of the Constitution, then that act, so far as it is the source of power to the railroad companies to issue what are known as Internal Improvement Bonds, *is likewise within such limitation*. Every department of the State government for over twenty years has recognized the constitutionality of these bonds. The highest courts of the State and Federal governments have passed judgments based upon a like view, and millions of money have changed hands in the same manner. All this is at least very suggestive of the conclusions that no one has seriously entertained the view that these bonds were *ultra vires* the corporations issuing them. In no adjudicated case do we find the question even raised. Of section 13, Article XIII., which is not insisted upon here by the State as such limitation upon the power of the Legislature as prevented it from granting the exemption from taxation, here questioned, we say nothing by way of argument, as it is very evident that it has nothing to do with the question.

This brings us to the consideration of Section 1, Article VIII., of the Constitution. It is: " That the General Assembly shall devise and adopt a system of revenue, having regard to an equal and uniform mode of taxation, to be general throughout the State."

A statement of the constitutional provisions of the several States in reference to the subject of taxation, and the decisions of their courts as to the matter of exemptions thereunder, will aid us in stating the rule upon the subject under our own:

Wisconsin—" The rule of taxation shall be uniform and taxes shall be levied upon such property as the Legislature shall prescribe." Section 1, Article VIII., Constitution of 1848, admitted in Knowlton vs. Supervisors of Rock County, 9 Wisconsin, 424, that there might *be an absolute exemption,* and held that property cannot be classified and taxed as classed by different rules. Held also in The Attorney-General vs. The Winnebago Lake and Fox River Plank Road Company, 11 Wisconsin, 35, that an act of the Legislature commuting all taxes upon plank and railroad companies for one per cent. upon earnings was unconstitutional, but admitted the right to exempt absolutely. See Gilman vs. The City of Sheboygan, 1 Black, U. S., 514, where the Wisconsin cases are collected.

Missouri—" All property subject to taxation in this State shall be taxed in proportion to its value." Held, in Hamilton and Treat vs. St. Louis County Court, 15 Mo., 1, that the Constitution is mandatory upon the Legislature when exercising the taxing power; that " what property shall be subject to taxation is left to their discretion, but when they have selected the subjects, the rule for assessing the tax is in proportion to the value of the property."

Illinois—The early Constitution of this State provided that " the mode of levying a tax shall be by valuation, so that every person shall pay a tax in proportion to the value of the property he or she has in his or her possession." Held, in State Bank of Illinois vs. The People, 4 Scammon, 303, that the lands and other property of the State Bank of Illinois might be exempted from all taxes. The statute sustained, authorized commutation of all taxes for one-half per cent. on the amount of all capital stock annually paid in.

Kansas—" The Legislature shall provide for a uniform and equal rate of assessment and taxation; but all property

used exclusively for State, county, municipal, literary, edu-
cational, scientific, religious, benevolent and charitable pur-
poses, and personal property to the amouut of at least two
hundred dollars for each family, shall be exempt from taxa-
tion." Considering the question whether the Legislature
could legally exempt any property from taxation other
than that expressly named in the Constitution, the Su-
preme Court of that State, in Frances, Treas., vs. A. T. and
S. F. Railroad Co., 19 Kan., 310, says: "There is, in terms,
no prohibition in such exemption, and as to personal prop-
erty, the language of the Constitution seems to imply the
existence of a power to exempt." It says: "All property
used, * * * and personal property to the amount of,
*at least,* two hundred dollars for each family, shall be ex-
empted from taxation." The court, after calling attention
to the provisions of the Constitutions of Arkansas, 1868;
Illinois, 1870; Louisiana, 1868; Minnesota, 1857; Missis-
sippi, 1868; Missouri, 1865; North Carolina, 1868; Ten-
nessee, 1870; Virginia, 1870; says: "In all these provis-
ions will be noticed either an express direction to tax *all*
property, or an express prohibition on exempting any other
than certain specified property. Our Constitution contains
neither. Does it mean the same without, as those do with?
The positive language of these several sections, sustains, if
it does not compel, the positive assertions of the various
decisions cited by counsel." These decisions held that the
Constitution prohibited exemptions.

Mississippi — Section 13, Article XII., Constitution —
"The property of all corporations, for pecuniary profits, shall
be subject to taxation the same as that of individuals."
Section 20, Article XII., Constitution—" Taxation shall be
equal and uniform throughout the State. All property
shall be taxed in proportion to its value, to be ascertained
as directed by law." In the case of the Mississippi Mills

Company vs. W. W. Cook, Tax Collector, 56 Miss., 41, the Supreme Court of that State held that the requirement is not that the property of all corporations, for pecuniary profits, shall be *subjected* to taxation, but that it shall be subject, that is, liable to taxation. That the Legislature may exempt property of a particular class, whether the owners be corporations or natural persons; but such property could not be placed beyond the taxing power. That the words " all property shall be taxed in proportion to its value," do not require that all property shall be taxed and deny to the Legislature the right to exempt any. That the Legislature may exempt property of a certain class, or property used for a certain purpose.

Alabama—Section 1, Article XIII.—" Corporations may be formed under general laws, but shall not be created by special act except for municipal purposes. All general laws and special acts passed pursuant to this section may be altered, amended or repealed."

Section 4, Article XIII.—" The property of corporations now existing, or hereafter created, shall forever be subject to taxation the same as property of individuals, except corporations for educational and charitable purposes."

In the case of The Mayor of Mobile vs. Stonewall Insurance Company, 53 Ala., 580, it was held that it was not competent for the General Assembly, in the imposition of taxes, to distinguish or discriminate in favor of corporate property subject to taxation, and that if property of a particular kind is subject to taxation and owned by a corporation, it must bear the rate of taxation imposed on individuals. This decision, and the case of The City of Davenport vs. The C. R. I. & P. R. R. Co., 38 Iowa 643, seem to conflict to some extent with the case cited from Mississippi.

Illinois—" The General Assembly shall provide for levy-

ing a tax by valuation so that every person and corpora-
tion shall pay a tax in proportion to the value of his or
her property.   *   *   *   But the General Assembly shall
have power to tax peddlers, auctioneers,   *   *   *  and
persons using or exercising franchises and privileges in
such manner as they shall from time to time direct." " The
specifications of the objects and subjects of taxation shall
not deprive the General Assembly of the power to require
other objects or subjects to be taxed in such manner as may
be consistent with the principles of taxation fixed in this
Constitution." Held, in the Illinois Central Railroad Com-
pany vs. The County of McLean, 17 Ill., 291, that " it was
within the constitutional power of the Legislature to com-
mute the general rate of taxation for a fixed sum," and
that " the provisions in the charter of the Illinois Central
Railroad Company, exempting its property from taxation
upon the payment of a certain proportion of its earnings,
are constitutional." To the same effect see Hunsacker,
Sheriff, vs. Wright, 30 Ill., 146. See also Chicago vs. Shel-
don, 9 Wall., 55.

Arkansas — " All property subject to taxation shall be
taxed according to its value, that value to be ascertained
in such manner as the General Assembly shall direct, mak-
ing the same equal and uniform throughout the State. No
one species of property from which a tax may be collected
shall be taxed higher than another species of equal value."
In Pike vs. The State, 5 Ark., 205, it was held that "prop-
erty of every character and description upon which a State
tax may be levied must be taxed in proportion to its real
and true value; and no portion of any distinct genus or
species of property on which such tax is imposed can ever
be exempt from it." The doctrine of the last clause was
overruled in The State of Arkansas vs. County Court of
Crittenden county, 19 Ark., 368. The court say, "We de-

clare the true rule of construction to be that the Legislature has the power, under the Constitution, to select the objects of taxation, and upon the exercise of this power there is no constitutional restriction. When the Legislature has selected the objects, then restrictions attach as to the imposition of taxes upon them, and the end intended to be accomplished is equality and uniformity in the taxation of all property *taxed* throughout the State, and not equality and uniformity throughout the State as to the *whole* of each or any particular species of property from which objects of taxation may have been selected. The restrictions relate to the valuation of the property taxed, and to the rate of taxation imposed. They require all the property selected for taxation to be taxed according to its value, and that the *rate* of taxation shall not be higher upon the property of one tax-payer than upon that of another, no matter whether the property be of the same or different species." The court then allude to the fact that a number of named exemptions have existed under statutes ever since the adoption of the Constitution. In the late Constitutions of Arkansas, in the Constitution of California in force in 1868, and in the Constitution of Ohio in force in 1856, the provisions upon the subject of taxation require, in terms; the taxation of *all* property and the power of the Legislature to exempt is denied. Fletcher vs. Oliver, Sheriff, 25 Ark., 293; People vs. McCreery, 34 Cal., 435; Exchange Bank of Columbus vs. Hines, 3 Ohio State, 16.

Louisiana—" Taxation shall be equal and uniform throughout the State. All property shall be taxed in proportion to its value to be ascertained as directed by law. The General Assembly shall have power to exempt from taxation property actually used for church, school or charitable purposes," etc. In Mr. and Mrs. Lefranc vs. City of New Orleans, 27 La. An., 189, held that this excludes the

power to exempt beyond the named exemptions. In City of New Orleans vs. Fourchy, 30 La. An., 913, an exemption from taxation of $500 worth of household furniture and an exemption of $1,000 of income were sustained. It cannot be a matter of surprise that two members of the court dissented.

With these decisions before us there is little difficulty in giving the rule of exemptions as existing under our Constitution. The Legislature has full power here over the subject of taxation. It is directed to devise and adopt a system of revenue, and in doing so nothing is required of it except that regard shall be had to an equal and uniform mode of taxation to be general throughout the State. There is no provision directing all property to be taxed or limiting the power of the Legislature in the matter of exemptions. As to the property made the subject of taxation, the requirement of uniformity prevents the adoption of different and irreconcilable methods as applicable to the same class or kind of property, and the requirement of equality prohibits taxing property of equal value at different rates. This we conceive to be the rule deduced from the Constitution. We think the language quoted from the case of The State of Arkansas vs. County Court of Crittenden County, 19 Ark., 368, gives the rule in this State. We cannot better express what is there said and quoted in this opinion, and we adopt it.

We must confess that we cannot appreciate what may be called the classification exemption cases. As an elementary proposition, a house owned by a corporation is as much the subject of taxation as a house owned by an individual. It is the same kind and species of property, no matter who owns it, and we cannot see how the Legislature, when the rule it is to prescribe is to be equal and uniform, can exempt it for the reason that it is used for one

purpose or by one owner rather than another. If exempted it must result from the admitted power to exempt the property as property not because of the character of ownership. It may be true that ownership and use may prompt the legislative action and may be made the method of identification of the subject-matter of the exemption, but the power is not controlled or modified by the nature of the subject upon which it acts or its ownership. Viewed as a question of power in the Legislature, whether a saw or a hammer is in the hands of a merchant or a mechanic is immaterial; so also is it immaterial whether it is used to construct a church or a penitentiary.

It was the practice of the Legislature to allow exemptions under the Constitution of 1839, from the time of its adoption to the time when it ceased to be operative, and the power to make such exemptions has never been questioned. The rule we state is the general rule following a fair construction of the Constitution. In this case, however, we are dealing with a species of property which had an especial standing and status under the Constitution of 1839. The legality of the exemption allowed here is to be determined not alone by a reference to the clause of the Constitution regulating the power of the Legislature in the matter of taxation, but also in view of the provisions of Section 1, Article XI., of the Constitution, which made it the duty of the State government not only to encourage the system of internal improvements to which this road belonged, but also to provide for a suitable application of such funds as may be appropriated for such improvements. Under these circumstances the roads belonging to this system constituted a distinct class of railroads, so far public in their nature as under the Constitution to be the beneficial object of an appropriation of public funds. An exemption from taxation was a very proper method of encouragement. It was

but an indirect method of appropriating, for the benefit of this road, an amount of public moneys equal to the amount of its taxes, and this power no one can, with reason, deny.

As to the remaining question, as stated, we are not prepared to say with absolute certainty that the case of Wilson vs. Gaines, 103 U. S., 417, decided since the case of Gonzalez vs. Sullivan, 16 Fla., 791, does not control this case. While the cases are not precisely similar, yet looking to the opinion rendered in that case (the case of Wilson vs. Gaines), and the manifest tendency of the court, we cannot affirm that the Supreme Court of the United States would not in this case hold that the exemption here was an immunity which, upon the acceptance of the provisions of the Internal Improvement Act by the Alabama and Florida Railroad Company, attached to it as a "personal privilege," and that it did not follow the road through the several transfers by which it became the property of the Louisville and Nashville Railroad Company. The law of the obligation of contracts as affected by State legislation is under the Constitution of the United States a matter of Federal rather than State jurisdiction, and it is our wish, as it is our duty, to do all we can consistently to give the people of this State the benefit of the action of that jurisdiction, which is the proper forum to settle this important question. Under the peculiar legislation of Congress calling into action the jurisdiction of the Supreme Court of the United States, the decision here must be in favor of the validity of the statute imposing this tax, in order to its review by the Supreme Court of the United States. It was insisted upon the hearing of this cause that, in view of the antecedent decision of the case of Gonzalez vs. Sullivan, the action of the Circuit Court was proper. We think the Judge of the Circuit Court very properly left it to this tribunal to modify or change its own decision, but the case when it reaches us must be disposed

of according to our judgment now. Contrary to our usual practice, but in conformity to our admitted power, the judgment of this court will dispose of the case without a *remittitur*.

The order of the Circuit Court awarding an injunction is reversed, the injunction is dissolved and the bill is dismissed.